IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-0244-CR-W-SRB |
| | ) | |
| WARREN E. FRANKLIN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## Order

Before the Court is a Report and Recommendation (Doc. #70) on Defendant's Motion to Suppress Custodial Statements (Doc. #55). This Court adopts in part and rejects in part Magistrate Judge Matt J. Whitworth's Report and Recommendation (Doc. #70). Defendant's Motion to Suppress Custodial Statements (Doc. #55) is granted in part and denied in part. For the reasons stated below, the Court finds all utterances before and including Defendant's comment "My daughter was just born last night" are admissible. (Govt. Ex. #2). The remainder of the exchange is inadmissible.

Defendant is charged in a four-count indictment with being a felon in possession of a firearm, possession with intent to distribute cocaine base, possession with intent to distribute heroin, and possession of a firearm in furtherance of a drug trafficking crime. Defendant seeks an order suppressing custodial statements obtained during his arrest on July 24, 2017.

Following an evidentiary hearing, the Magistrate Judge issued a Report and Recommendation in which he concluded: Defendant was in custody and had not been read the *Miranda* warnings at the time the statements were made, and Defendant's statements, although

voluntary, were not a product of custodial interrogation. Based on these determinations, the Magistrate Judge recommended that Defendant's motion to suppress be denied.

Defendant timely filed objections to the Report and Recommendation. This Court reviews the matter *de novo*. *United States v. Lothridge,* 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)) (When a party objects to a Report and Recommendation concerning a motion to suppress in a criminal case, the court is required to "make a de novo review determination of those portions of the record or specified proposed findings to which objection is made.").

**I.     Statement of Facts**

The Report and Recommendation provides a detailed account of the events related to the investigation and arrest. The Court has considered the transcript of the hearing conducted by the Magistrate Judge (Doc. #66) and carefully viewed the dashboard camera ("dash cam") footage of the incident (Gov. Ex. #1). For the convenience of the reader, the Court republishes the Government's version of the transcript of the statements at issue:[1]

> **Officer Davidson**: "I don't think he is."
> **Defendant** (interjecting): "What?"
> **Officer Davidson**: "Impaired."
> **Defendant**: "Nah"
> **Officer Pollard**: "That's what I do. That's why I'm here. Well, actually, I saw you running."
> **Defendant** (speaking over the officers' conversation): "Aww man, my daughter was just born last night, man."
> **Officer Davidson**: "What happened?"
> **Defendant**: "My daughter was just born last night."

---
[1] Defendant's version of the transcript varies in punctuation and phrasing. (Doc. #55, pp. 2-3). At the hearing, Defendant did not object to the introduction of the Government's transcript but noted the dash cam footage was the best evidence. The Court has noted where the Defendant's transcript varies in punctuation.

2

**Officer Pollard**: "Celebrating with PCP."[2]

**Defendant** (speaking over the officers' conversation): "I don't smoke it."

**Officer Pollard**: "What did you say?"

**Defendant**: "I smoke weed."

**Officer Pollard**: "You got a vial of PCP up in your ride."[3]

**Defendant**: "I smoke it."

**Officer Pollard**: "But that's not weed, that's PCP."

**Defendant**: "(Unintelligible speech) . . . I do a little bit of everything, bro."

**Defendant**: "Everybody got . . . (interrupted by officer)

**Officer Pollard**: "Every blood draw I do on drunk drivers comes back weed and PCP. That's a fact."

**Defendant**: "(Unintelligible speech)."

**Defendant** (speaking over the officers' conversation): "I do drugs, that's just what I do. I like to buy drugs. And I do this shit."

**Officer Davidson** (to a passer-by): "Keep walkin', man. Thank you."

(Nine seconds of silence)

**Defendant**: "I didn't even have a chance, man."

**Officer Davidson**: "You had no chance whatsoever to get away, I promise."

**Defendant**: "I ain't even from here bro. I wasn't gonna get away nowhere."

(Gov. Ex. #2).

II.   Analysis

*Miranda* warnings are required when there is a custodial interrogation. A custodial interrogation means a suspect must be "both in custody and being interrogated."[4] *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). Any statements stemming from a custodial interrogation of a defendant without the necessary procedural safeguards of the *Miranda*

---

[2] Defendant's version of the transcript indicates this was a question. (Doc. #55, p. 3).
[3] Defendant's version of the transcript indicates this was a question. (Doc. #55, p. 3).
[4] All parties agree Defendant was in custody at the time the statements were made and no *Miranda* warnings had been given.

3

warnings are inadmissible. *Miranda*, 384 U.S at 444. However, any voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without *Miranda* warnings.[5] *United States v. Swift*, 623 F.3d 618, 622 (8th Cir. 2010).

Defendant satisfied his burden of production for the motion to suppress by alleging that he underwent express questioning or the functional equivalent of questioning by law enforcement in the absence of *Miranda* warnings. *United States v. McArthur*, No. CRIM. 12-26(1) JRT, 2012 WL 6194396, at *3 (D. Minn. Dec. 12, 2012). The burden thus shifted to the Government to prove by a preponderance of the evidence that Defendant's statements were not elicited in violation of *Miranda. Id.*

The only question before the Court is whether Defendant's custodial statements were compelled as part of a custodial interrogation. Not all statements made after a person has been taken into custody are considered to be part of an interrogation. Rather, an interrogation is said to have occurred when a law enforcement officer engages in "either express questioning or its functional equivalent, which includes any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *United States v. Jackson*, 852 F.3d 764, 771 (8th Cir. 2017) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). "The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Jackson*, 852 F.3d at 771. The Magistrate Judge found that no custodial interrogation took place.

The Magistrate Judge found that Officer Davidson's first question ("What happened?") was a request for clarification and not an express question amounting to interrogation. In so

---

[5] This Court agrees with the Magistrate Judge's conclusion that Defendant's statements were voluntary.

4

finding, the Magistrate Judge relied on *United States v. Chipps*, 410 F.3d 438 (8th Cir. 2005). In *Chipps*, the Eighth Circuit stated, "An officer's request for clarification of a spontaneous statement generally does not constitute interrogation." *Id.* Because this Court agrees Defendant's original comment regarding the birth of his daughter ("Aww man, my daughter was just born last night, man.") was a spontaneous statement, the Court agrees with the Magistrate Judge's findings as to Officer Davidson's question. This question "in the context of what was occurring when [it was] made [was] clearly just [a] response[] by the officer[] in an attempt to figure out what [Defendant] was saying to [him] as he interjected himself into their conversation." (Doc. #70, p. 6). Because this question did not constitute custodial interrogation, *Miranda* warnings were not required at this time, and Defendant's response to this question ("My daughter was just born last night.") is admissible.

The same cannot be said for the remainder of the exchange. The Government attempts to characterize Officer Pollard's remarks ("Celebrating with PCP."; "What did you say?"; "You got a vial of PCP up in your ride."; "But that's not weed, that's PCP!"; "Every blood draw I do on drunk drivers comes back weed and PCP. That's a fact.") as mere statements or sarcastic comments between Officers Pollard and Davidson. The dash cam footage captured only an audio recording of the conversation at issue; Officer Pollard, Officer Davidson, and Defendant are outside the video frame. This Court finds it cannot be established based on the audio included in the dash cam footage that any portion of the conversation occurred only between the two officers. There is no video recording of the communication showing that any portion of the conversation took place exclusively between the two officers. The Court finds the remainder of the exchange at issue to have been, more likely than not, among the two officers and Defendant.

5

The positioning of the officers with respect to Defendant supports such a conclusion. As Officer Davidson testified, "[D]efendant was seated on the ground against a police car. . . [The officers] had placed [themselves], one was near the front bumper, between maybe the tire and the front bumper, and the other one towards the back door of the police car . . . ." (Doc. #66, p. 28). Each officer was approximately four to five feet from Defendant. (Doc. #66, p. 28). Defendant—handcuffed with his legs straightened and ankles crossed—was positioned in the middle of the two officers.

Additionally, the course of the conversation indicates that the exchange took place among the two officers and Defendant. The exchange is immediate—the comments follow in rapid succession of each other with no pauses. *Contra Chipp*, 410 F.3d at 445. (Defendant's incriminating statement was admissible as a spontaneous statement made during a conversation not initiated by the officer: "It followed a one-minute lapse during which there was no talking . . . ."). There is no indication that anyone broke away or disengaged from the conversation.

These factors, along with the content of the exchange, support this Court's conclusion that the officers should have known their remarks were reasonably likely to elicit an incriminating response from Defendant. *Jackson*, 852 F.3d at 771. The officers' comments implicate Defendant in drug possession or usage. It should not be surprising that a person accused of illicit drug use would respond in some way to comments containing such allegations.[6]

The fact that the officers did not intend to elicit an incriminating response is of no matter. The Supreme Court directs this Court to focus primarily upon the perceptions of the *defendant*, not the officer. *Innis*, 446 U.S. at 301. The Court finds—based on the placement of the officers with respect to the Defendant, the tempo of the conversation, and the content of the exchange—

---

[6] The Supreme Court is clear that *Miranda* warnings are required whether the reasonably expected response be inculpatory or exculpatory. *Innis*, 446 U.S. at 301, n. 5.

6

the officers should have known the exchange was reasonably likely to elicit an incriminating response.

The Government relies primarily on two cases to support its position. The first case, *United States v. Hawkins*, 102 F.3d 973 (8th Cir. 1996), is inapplicable. In *Hawkins* the Eighth Circuit denied a motion to suppress statements obtained from the following incident. Police entered defendant Hawkins' house pursuant to a no-knock warrant. Detective King handcuffed Hawkins and placed him in a kitchen chair. Hawkins said, "King, there ain't nothing in my house." *Id.* at 975. King replied that police knew there were drugs in the house and Hawkins "could make it easier on himself" if he disclosed where they were hidden. *Id.* Hawkins repeated that there were no drugs in the house. A few minutes later, another detective found 3.8 grams of crack cocaine in a potted plant. With illegal drugs now discovered, Hawkins asked to speak in private with Detective King. When they were alone, Hawkins asked King, "What can I do to help myself? I got to help myself." *Id.* Hawkins then offered up incriminating statements. Hawkins was not advised of his *Miranda* rights until later that evening at the police station.

Here, the Government argues Defendant, much like Hawkins, "initiated the conversation with the police by interjecting into the officers' conversation." (Doc. #56, p. 7). This is too simplistic a characterization. As stated above, Officer Pollard engaged Defendant in the conversation with the comment/question "Celebrating with PCP" and those that followed. Unlike in *Hawkins*, Defendant's statements were not "spontaneous admission[s] made under circumstances not induced by the investigating officers. *Hawkins*, 102 F.3d at 975 (citing *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir.1989) (quotation omitted), *cert. denied*, 496 U.S. 909 (1990)).

7

The Government also argues, "similar to *Hawkins*, Defendant only makes his voluntarily incriminating statements after PCP was discovered in his car." (Doc. #56, p. 8). While this may be true, it is not clear from the video that Defendant knew PCP had been found in his car at this point. At the start of the officers' search of the vehicle, the officers signaled the presence of potential drugs to each other. This signal was passed over the car, outside of Defendant's eyesight. In *Hawkins*, the Eighth Circuit reasoned it was "obvious" that the "discovery of illegal drugs in his home, not police coercion, . . . induced the incriminating statements." *Hawkins*, 102 F.3d at 975. The same cannot be said here.

Additionally, the Government relies upon *United States v. Henderson*, No. 05-3355-01-CR-W-HFS, 2006 WL 1696538 (W.D. Mo. June 12, 2006). Likewise, this case is inapplicable to the present matter. In *Henderson*, the defendant was staying at a hotel. The police entered the hotel room and arrested the defendant, placing him at the foot of the bed. The police searched the hotel room and found a gun in the bathroom. The searching police officer stated to her partner, "Here's your gun." *Id.* at 5. Following this, Defendant made several "spontaneous statements regarding the gun, such as, 'The gun isn't mine. I don't know how the gun got into the room.'" *Id.*

The *Henderson* court denied the motion to suppress. The Government argues the same result is proper here. However, the Government's position fails to appreciate a factual distinction between *Henderson* and the case at bar. In reaching its conclusion that no interrogation took place, the *Henderson* court noted that the searching police officer "did not respond to Defendant's statements by asking any follow-up questions or by seeking clarification." *Id.* at 7. This is not the case here.

8

Therefore, this Court finds the officers should have known their exchange with Defendant (following Officer Pollard's comment/question, "Celebrating with PCP") was reasonably likely to elicit an incriminating response from Defendant. Thus, the Court finds the officers engaged in interrogation for this part of the exchange. Because no *Miranda* warnings were given, this part of the exchange must be suppressed.

### III. Conclusion

Therefore Defendant's Motion to Suppress Custodial Statements (Doc. #55) is granted in part and denied in part. The Court finds all utterances before and including Defendant's comment "My daughter was just born last night" are admissible. (Govt. Ex. 2). The remainder of the exchange is inadmissible.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

DATE: June 22, 2018